Argued April 8, affirmed April 15, 1919.

# ZUCKERMAN *v.* SANITARIUM CO.

### (179 Pac. 911.)

**Courts—State Courts—Jurisdiction.**

1. A state court has jurisdiction of an action for false imprisonment against a sanitarium to which plaintiff was alleged to have been illegally committed as insane by a United States territorial court or officer.

**Evidence—Judicial Notice—Alaska.**

2. Judicial notice will be taken of fact that Alaska is a part of United States and that, under Act Cong. Feb. 6, 1909, Secretary of the Interior was authorized to make a contract with a private sanitarium company for the care of persons adjudged insane in such territory.

**False Imprisonment—Confinement of One Adjudged Insane.**

3. It appearing that trial and commitment of plaintiff as an insane person were before and by court having jurisdiction of subject matter and of person of plaintiff, she cannot recover damages for false imprisonment from a sanitarium to which she was legally committed.

[As to what amounts to false imprisonment, see note in 118 Am. St. Rep. 719.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.

While the plaintiff was a resident of Alaska, in the vicinity of Iditarod, insanity proceedings were instituted against her in the probate court for Otter Precinct, Territory of Alaska, Fourth Division, based upon which her case was brought before that court and "at a trial by jury" she appeared in person and by two attorneys appointed by the court to represent her. After the hearing the jury returned a verdict to the effect that "the said Sandford Zuckerman is really and truly insane and that she ought to be committed to the asylum or sanitarium provided for the care and keeping of the insane for the District of Alaska, and the said finding of the jury having been approved by the commissioner," it was decreed by the court that she

was "really and truly insane" and "that she be committed to the asylum or sanitarium provided for the care and keeping of the insane for the District of Alaska." On July 7, 1911, the court issued its warrant and commitment to the United States marshal for that judicial division of the Territory of Alaska, by which that officer was directed to deliver the plaintiff to the asylum provided, "to be thereafter properly and safely kept until discharged therefrom, and she is in the meantime committed to" the custody of the marshal.

Alleging that on July 7, 1911, she was, over her objections, protests and remonstrances, "tried and committed to the institute for feeble-minded from Otter Precinct, District Number four of the Territory of Alaska"; that she was delivered to the institute of the defendants on September 8, 1911, and that she was then "in good and perfect health and mind and was conscious of the acts and deeds of the defendants in placing her in said institute"; that she protested against being placed and confined therein and deprived of her liberty, and that she was seriously and permanently injured in her physical health and suffered mental anguish by reason of which she sustained special damages in the sum of $4,093 and general damages in the sum of $20,000, she commenced this action against the defendants.

The Sanitarium Company, the Sanitarium Association and Henry Waldo Coe answered, admitting the existence of the corporations as alleged; that the Sanitarium Company operated the Morningside Hospital; that it received compensation for care and attention given to patients and that Dr. Coe was the president and manager of the Sanitarium Company. As a further and separate answer it is alleged that on March

19, 1914, acting through the Interior Department and pursuant to an act of Congress, the United States entered into a contract with the Sanitarium Company by which that defendant, for an agreed compensation, undertook to receive and give medical treatment to any individuals adjudged insane in the territory of Alaska delivered to that defendant by the proper officers of the United States, for a period of five years from January 16, 1915; that by said contract the defendant was required to keep safely and exercise extraordinary care to prevent escape of any insane patient committed to its keeping by the United States, and to "keep any such person in custody until the said defendant and its officers, and the agents of the United States government shall, in the exercise of their judgment and discretion, determine that any such person may be safely discharged from custody," and that the defendant was required to and did execute a penal bond in the sum of $5,000 for the faithful performance of the contract. The defendants then aver the insanity proceedings against the plaintiff in the probate court of Alaska, the hearing thereon, the verdict of the jury and the order of the court adjudging the plaintiff insane, the issue of the warrant to the marshal and the delivery of the plaintiff to the Sanitarium Company, and attaches as exhibits duly certified copies of such proceedings. The answer further pleads that the plaintiff was held in custody by the defendants by virtue of said warrant and under the terms and provisions of the contract with the United States.

In her reply the plaintiff denies "each and every allegation" of the further and separate answer, but there is no averment or proof that the committing court did not have jurisdiction of the plaintiff or the subject matter. On such issues a trial was had on January 16,

1917, and a verdict was returned in favor of the plaintiff in the sum of $2,500. The court set aside the verdict and granted a new trial. On April 25, 1917, the case was again heard and after the testimony was all taken the defendants filed a motion to dismiss, "on the ground that it conclusively appears that the plaintiff, while in the territory of Alaska, was legally adjudged insane, and as a ward of the federal government was detained by an agent of the Interior Department," and for the further reasons that "this is an action for false imprisonment and cannot be maintained for the reason that it appears that the plaintiff was adjudged insane and was committed and held pursuant to such judgment and commitment," and that "neither said judgment nor commitment was ever at any time set aside or modified and at no time thereafter was application made by the plaintiff to any court or tribunal to have determined her mental condition or her right to discharge." After argument the court sustained the motion to dismiss, "for want of jurisdiction of this court to hear and determine said cause for the reason that said cause of action should be had and maintained in the federal court and not in a state court"; and that "this court has no jurisdiction in the matters herein," and rendered judgment for costs in favor of the defendants, from which ruling the plaintiff prosecutes this appeal.                     AFFIRMED.

For appellant there was a brief over the names of *Mr. Elton Watkins* and *Messrs. Winter, Reames & Maguire,* with an oral argument by *Mr. Watkins.*

For respondents there was a brief over the names of *Mr. Malcolm H. Clark* and *Mr. Alfred E. Clark,* with an oral argument by *Mr. Malcolm H. Clark.*

JOHNS, J.—1. While it is true that the court dismissed the action for "want of jurisdiction * * to hear and determine the said cause for the reason that the said cause of action should be had and maintained in the federal court and not in a state court," and that such ruling was a technical error, the true reason was correctly given in the following statement which the court made to the jury:

"Upon the theory upon which this case was tried, it would be necessary in order for plaintiff to recover to prove that the plaintiff was never legally adjudged insane, and that there was never any legal warrant issued for her commitment. In other words, that her imprisonment was not a result of judicial proceedings. Now it clearly appears that her arrest, trial, judgment of insanity and commitment were all legal and regular in a court of competent jurisdiction and pursuant to the acts of Congress. The proceedings of that court have never been reversed or modified, and I am compelled to hold as a matter of law that these proceedings are without defect and are legal and regular in every respect. This being the situation, she was legally arrested, taken into custody and delivered into the custody of the defendant, at the Morningside Hospital, the institution designated by the United States government for the care of the Alaska insane, and therefore her imprisonment was not false, the theory upon which this case was tried."

It appears from the record that a complaint was filed against the plaintiff here in a court of general jurisdiction, charging her with insanity, whereupon she was apprehended and tried by a jury. After an investigation and trial, at which she was represented by counsel appointed by the court, the jury found that the plaintiff was "really and truly insane" and that she ought to be committed to an asylum. This finding was approved by the commissioner or trial court and a war-

rant and commitment were issued and delivered to the United States marshal, directing him to deliver the plaintiff safely to the asylum. It further appears that the defendant the Sanitarium Company, of Portland, Oregon, had a valid contract with the United States to care for and to "exercise extraordinary care to prevent the escape from said defendant of any such insane patient committed by the United States to its care and keeping" until such time as its officers and agents should, "in the exercise of their judgment and discretion, determine that any such person may safely be discharged from custody." Under this commitment and by virtue of the contract mentioned, the plaintiff was delivered to the Sanitarium Company. The judgment has never been vacated or set aside and has at all times been, and is now, in force and effect. There is no proof or allegation of fraud, and the plaintiff does not question the jurisdiction of the court which adjudged her insane.

2, 3. This court should take judicial notice of the fact that Alaska is a part of the United States and that under Act Cong. Feb. 6, 1909, Chap. 80 (35 Stat. 601) the Secretary of the Interior was authorized to make the contract with the Sanitarium Company as alleged in the answer. By the Compiled Statutes of Alaska for 1913, pages 52–56, jurisdiction of insanity proceedings is conferred upon a United States commissioner and *ex-officio* probate judge. It appears from the record that the trial and commitment were before and by a court which had jurisdiction of the subject matter and of the person of the plaintiff; that such jurisdiction is not questioned and that no attempt has ever been made to vacate or set aside the judgment of the Alaska court. For such reasons this court must

assume that they were valid and were made by a court of competent jurisdiction.

The judgment of the Circuit Court is affirmed.

                                                AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.

---

[Argued April 1, affirmed April 15, 1919.