G. Wellington Douglas, Claimant, *v.* State of New York, Defendant. (Motion No. 1056.)

Court of Claims, January 26, 1945.

*Nathaniel L. Goldstein, Attorney-General* (*Donald C. Glenn* of counsel), for defendant.

*Albert Jakobson* for claimant.

GREENBERG, J.   Motion was made to dismiss the claim herein on the ground that it fails to set forth facts sufficient to constitute a cause of action.

The claim is for the recovery of damages sustained on account of the alleged false arrest and imprisonment of the claimant in the St. Lawrence State Hospital, pursuant to an allegedly void and illegal order of commitment made by Robert S. Waterman, the duly elected, qualified and acting Special Surrogate of St. Lawrence County.   It is claimant's contention that the Special Surrogate lacked power to make the order of commitment since the Surrogate, the County Judge and the Special County Judge of St. Lawrence County were all present in the county and had not disqualified themselves to act, nor had any of them filed certificates of such disqualification.

The office of Special Surrogate was created by chapter 306 of the Laws of 1849, authorizing such local officers to act in certain instances.   The act was amended by chapter 108 of the Laws of 1851, as follows: " Such local officers, so elected, to discharge the duties of county judge, or of county judge and surrogate, or to discharge the duties of surrogate in those counties, where there shall be a separate officer to discharge the duties of surrogate, shall possess all the powers and perform the duties which are possessed and can be performed by a county judge out of court, and any proceeding commenced before any such special county judge, or special surrogate, may be finished by him, or he may by order direct that the same shall be finished by the county judge, or by the surrogate as the case may be."

The Court of Appeals, in *Matter of Rudd* v. *Hazard* (266 N. Y. 302, 305) had occasion to pass upon the powers of the special officers, holding: " The Special County Judge has power to discharge the duties of the County Judge ' in cases of vacancy or inability; ' and, at all times, he possesses all the powers and may perform the duties which are possessed and can be performed by a County Judge ' out of court.'   (Laws of 1849, chap. 306, as amd. by Laws of 1851, chap. 108; Const. art. VI, § 16; *Seymour* v. *Mercer,* 13 How. Pr. 564; *Kinney* v. *Roberts & Co.,* 26 Hun, 166, 172; app. dismissed, 89 N. Y. 601.) "

In *Seymour* agt. *Mercer* (13 How. Prac. 564, 565, *supra*), the court held: " It is provided, by § 1 of *chap*. 108 of the *Sess. Laws of* 1851, (1 *R. S.* 4 ed., 314, § 19,) that such local officers,

in counties where there is no separate officer to discharge the duties of surrogate, shall be designated as special county judge; and in those counties where there is such separate officer, such local officers shall be designated as special county judge and special surrogate respectively; and that ' such local officers, so elected to discharge the duties of county judge, or of county judge and surrogate, or to discharge the duties of surrogate in those counties where there shall be separate officers to discharge the duties of surrogate, *shall possess all the powers, and perform the duties which are possessed and can be performed by a county judge out of court,'* &c. It is entirely clear that the legislature intended to confer upon these local officers, both special county judges and special surrogates, all the powers of the county judges which they could perform out of court, or at chambers, as well as all other powers both of county judge and of surrogate, in case of inability or vacancy in the offices respectively. And this construction, I think is warranted by the provision of the constitution above referred to."

That the Special Surrogate of St. Lawrence County had power to make the order of commitment is evident from a reading of section 74 of the Mental Hygiene Law,* which provided: " *Admission on court commitment.* 1. A person alleged to be insane, and who is not in confinement on a criminal charge, may be committed to and confined in an institution for the custody and treatment of the insane, upon an order made by a judge of a court of record of the city or county, or a justice of the supreme court of the judicial district in which the alleged insane person resides or may be, adjudging such person to be insane, upon a certificate made by two qualified examiners, accompanied by a verified petition therefor, or upon such certificate and petition, and after a hearing, as provided in this section." (As amd. by L. 1933, ch. 395, § 12.)

The order of commitment dated January 6, 1944, was made by the Special Surrogate pursuant to the provisions of section 74 of the Mental Hygiene Law, upon the petition of the claimant's wife and the certificate of two qualified examiners. The order could have been made upon such certificate and petition, either with or without a hearing. Here it was made without a hearing and it was certainly within the powers of a county judge " out of court " so to do. (*Sullivan* v. *Whitney*, 25 N. Y. S. 2d 762, 772.)

It follows, therefore, that the motion to dismiss the claim must be granted.

---

* Since amd. by L. 1944, ch. 665, eff. Oct. 1, 1944.

Upon the argument of the motion to dismiss, it was orally moved on behalf of the claimant to amend the claim for false imprisonment to plead that the claimant had not been granted a hearing before the Special Surrogate nor had he been examined by the two doctors prior to the making of the order for his commitment in the State mental institution. Decision was reserved upon such motion.

The order of commitment, which was valid on its face, had never been attacked, vacated or set aside. The State, in receiving the claimant for confinement at its institution, was obliged to do so and to detain him until such order was set aside or further proceedings were taken. The State cannot be held to respond in damages for false imprisonment even though the order may have been erroneously issued, where the process was regular on its face and issued by a court of competent jurisdiction. The rule of law applicable to the instant case was enunciated in 145 American Law Reports, Note, at page 730: " In actions for false imprisonment predicated upon the institution of, or conduct in connection with, lunacy proceedings, the courts have applied the rule, which governs actions for false imprisonment in general, that imprisonment which is authorized by process which is regular on its face and is issued by a court of competent jurisdiction is lawful, and cannot give rise to a cause of action for false imprisonment, even though the process was erroneously or improvidently issued. It protects those securing the order resulting in arrest or confinement, those who participated in the proceedings, and also those acting under the order or warrant." In the latter category are included institutions and asylums in which the subject is confined pursuant to the terms of the order. (*Zuckerman* v. *Sanitarium Co.*, 92 Ore. 90.)

Accordingly, the motion to amend must be denied as the proposed pleaded facts fail to state a cause of action.